FILED OCT 29 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CURTIS BRAXTON** : | Civil Action No. 07-4200 |
| : | |
| v. : | |
| : | |
| **R.M. LAWLER, et al.** : | |

### MEMORANDUM AND ORDER

**NORMA L. SHAPIRO, S.J.**                                          October 27, 2008

Curtis Braxton, a *pro se* litigant currently incarcerated at the State Correctional Institute at Huntingdon, Pennsylvania, filed a petition for writ of habeas corpus under 28 U.S.C. §2254. For the reasons below, the petition will be denied.

I.    **Facts and Procedural History**

The Pennsylvania Superior Court described the facts leading to Curtis Braxton's September 8, 1998 conviction for third degree murder, aggravated assault, attempted murder, possessing an instrument of crime and a firearm violation as follows:

> The evidence at trial established that [petitioner Braxton] and Kareem Scott had exchanged words with Kyleem Johnson and Raymond Negron. This stemmed from Johnson's efforts to break up a fight between Scott and another man. [Petitioner Braxton] and Scott left the area and then returned. Kareem Scott approached Kyleem Johnson and apologized to him about the argument. When Kyleem Johnson asked [Braxton] "what was up between the two of them?" [Braxton] responded "whatever." He then started to walk off the porch, but turned and fired his gun 4-5 times. One of the bullets struck Raymond Negron in the back of the head killing him. Another bullet struck Kyleem Johnson in the arm, shattering the bone. Both [Braxton] and Scott fled.

Commonwealth v. Braxton, No. 2923 Phila. 1998, slip op. at 1-2 (Pa. Super. Ct. Sep. 29, 1999), quoting Commonwealth v. Braxton, Nos. 97-11-0588-0589, slip op. at 2 (Pa. Ct. Common Pleas Mar. 1, 1999). Braxton was convicted following a bench trial before the Honorable Lisa A. Richette of the Court of Common Pleas for Philadelphia County and sentenced to 20 to 40 years imprisonment. Commonwealth v. Braxton, C.P. 97-11-0588-0589, Trial Transcript of June 25, 1998 at 303; Commonwealth v. Braxton, supra, Sentencing Hearing Transcript of Sep. 8, 1998 at 12. Braxton appealed his conviction to the Pennsylvania Superior Court on grounds that the verdict of third degree murder was not supported by

ENTERED
OCT 30 2008
CLERK OF COURT

sufficient evidence and the trial court misapplied the sentencing guidelines. Braxton's appeal was denied and the judgment of sentence was affirmed. Commonwealth v. Braxton, No. 2923 Phila. 1998 (Pa. Super. Ct. Sept. 29, 1999). The Supreme Court of Pennsylvania denied Braxton's request for discretionary review on February 23, 2000. Braxton did not file a writ of certiorari with the United States Supreme Court.

On July 19, 2000, Braxton filed a *pro se* Pennsylvania Post-Conviction Relief Act ("PCRA") petition. On January 13, 2004, after obtaining counsel, Braxton filed an amended PCRA petition on four grounds. First, Braxton claimed that trial counsel was ineffective for failing to present evidence that would negate the requisite state of mind necessary for conviction of third degree murder. Second, Braxton claimed that trial counsel was ineffective for failing to call Braxton as a witness in his own defense. Third, Braxton claimed that after-discovered and recantation evidence provided grounds for a new trial.[1] Fourth, Braxton claimed that trial counsel was ineffective for failing to advise him of his right of allocution. The court denied Braxton's petition in its entirety without a hearing. Commonwealth v. Braxton, No. 9711-0588, slip op. at 7 (Pa. Ct. Common Pleas May 24, 2005).

Braxton, appealing the decision of the PCRA court, raised the following three issues for the Superior Court's review:

1. Did the Honorable D. Webster Keogh err and abuse his discretion in not allowing Mr. Braxton to have a Post Conviction Hearing so he could present testimony and evidence of important after discovered and recantation evidence where credibility was an issue and further to present evidence as to ineffective assistance of counsel in not allowing and interfering with Mr. Braxton's testifying?

2. Did Judge Keogh err in not granting a new trial on the basis of recantation evidence and after discovered evidence?

3. Were trial and [appellate] counsel ineffective for interfering with or not preserving Mr. Braxton's right to testify at trial and for providing erroneous

---

[1] The after-discovered evidence is an affidavit of Roland Quay. The recantation evidence is an affidavit of Danny Rice, who testified for the Commonwealth at trial.

2

> advice not to testify when the issue of self defense or mistaken belief of self defense was before the fact finder and further for not presenting evidence of the post traumatic stress syndrome suffered by Mr. Braxton, which would have supported a mistaken self defense belief?

<u>Commonwealth v. Braxton</u>, No. 750 Eastern District Appeal 2005, slip op. at 2-3 (Pa. Super. Ct. Dec. 22, 2006). The court rejected Braxton's claims and affirmed Judge Keogh's decision denying PCRA relief. The Supreme Court of Pennsylvania denied Braxton's request for discretionary review on August 27, 2007. <u>Commonwealth v. Braxton</u>, No. 633 EAL 2006 (Pa. Sup. Ct. Aug. 27, 2007).

Braxton filed this petition for writ of habeas corpus on October 5, 2007. On April 21, 2008, Magistrate Judge Jacob P. Hart filed a Report and Recommendation ("R & R") recommending that the district court deny Braxton's petition. R & R at 24. On May 9, 2008, Braxton filed objections to Magistrate Judge Hart's recommendations.

## II.   Petitioner's Grounds for Habeas Corpus Relief

Braxton raised ten issues in his petition for habeas corpus relief. Magistrate Judge Hart summarized the claims in his R&R as follows:

1. His appellate rights under the 6th and 14th Amendments to the United States Constitution were violated when counsel refused to provide him with transcripts from his trial and sentencing before filing the direct appeal. Counsel "only raised one issue."

2. His right to effective counsel was violated when trial counsel failed to present evidence relevant to his state of mind, in order to defeat the "malice" element in murder. Specifically, counsel "failed to present medical and psychological facts" to show that Braxton suffered from post-traumatic stress disorder from having been shot twice in the past.

3. Trial counsel was also ineffective for failing to present character witnesses emphasizing his positive characteristics.

4. "Evidence was insufficient to support the verdict of murder in the third degree because the Commonwealth failed to meet its burden of proving that [Braxton] did not act in self-defense. There was no malice to support a third degree conviction."

5. "The [trial] Judge denied me my right to make a statement on my own behalf prior to sentencing me or afford my attorney the opportunity to present

3

information relative to sentencing before imposing [the] sentence. Also, [the] Judge was working with prejudice when she sentenced me out of anger, falsely accusing me of laughing."

6. Essentially this claim is a continued allegation of prejudice on the part of the Judge, who told the District Attorney after trial that she intended to give Braxton "a very long sentence" because he was a "menace to society." Braxton argues that the Judge therefore failed to consider his individual characteristics and background at sentencing.

7. The PCRA judge abused his discretion in failing to allow Braxton a hearing in light of his claims of after-discovered evidence, and recanted testimony.

8. PCRA counsel was ineffective for failing to explain to the judge why Quay Roland, the proponent of the after-discovered evidence was unavailable at trial.

9. This claim expands on the earlier claims: "[PCRA] counsel failed to submit Quay Roland's affidavit dated 12/30/02 to the Courts when he filed my Amended Petition on January 24, 2004. He waited until November 29, 2005, and submitted it in his brief to the Superior Court that was stricken, because he retired from practicing law. Counsel also raised the issue wrongly on his brief by not stating why Mr. Roland wasn't available for trial and counsel failed to turn over my paperwork to the attorney who took his place so he could have effectively pursued my appeal."

10. Trial counsel wrongly advised Braxton not to testify "due to the fact that he [was] serving a ten-year probation sentence from a prior robbery conviction." Braxton maintained that this "turned out to be prejudicial to the defense because petitioner would have testified to his mind-state which was the deter[minative] factor of the case and the fact that he saw deceased with a gun, coinciding with his statement to the authorities."

R&R at 3-4.

### III. Summary of Magistrate Judge Hart's Report and Recommendation and Petitioner's Objections.

Magistrate Judge Hart recommended that Braxton's habeas petition be denied. He found that Claims 1, 3, 5, 6, 8, and 9 should be denied because they are unexhausted and procedurally defaulted, and that the default should not be excused. He found that Claims 2, 4, 7 and 10 should be denied because the Pennsylvania Superior Court considered and rejected those claims on the merits.

Braxton objects to the R&R on numerous grounds. Braxton argues that procedural default should be excused because he raised claims 1, 3, 5 and 6 in his initial PCRA petition, but his counsel excluded

those claims when he filed the amended PCRA petition. Traverse by Kurtis [SIC] Braxton, *Prs* [SIC] *Se* to Petition for Writ of Habeas Corpus (hereinafter, "Traverse") at 1, 7, 13-14. Braxton argues that Claim 3 is not defaulted because it was raised in his amended PCRA petition. Id. at 1, 10.

Braxton also argues that any default should be excused because after-discovered and recantation evidence proves his actual innocence. Id. at 5. The after-discovered evidence is an affidavit of Quay Roland, a purported eyewitness to the shooting, who had stated that the victim was armed at the time of the shooting. The recantation evidence is an affidavit of Danny Rice, an eyewitness to the shooting and trial witness for the Commonwealth, who recanted his testimony that the victim was unarmed at the time of the shooting. Both statements would, in Braxton's opinion, support his theory of mistaken self defense.

On the merits, Braxton argues that Claim 2 should not be denied because trial counsel's failure to investigate and present evidence of Braxton's mental condition was "beyond the wide range of reasonable professional assistance." Id. at 8. Braxton claims that trial counsel should have sought expert testimony from a psychologist rather than merely having relied on Braxton's sister's testimony about his fear of being shot. Id. Braxton argues that Claim 4 should not be denied because his conviction was not supported by the evidence and Magistrate Judge Hart misapplied the elements of third degree murder under Pennsylvania law. Id. at 11-13. Braxton also argues that Claim 4 should not be denied because the trial judge's observations from the bench negate a finding of malice.[2] Id. at 12. Braxton argues that Claim 5 should not be denied because denial of his right to allocution violates his constitutional right to due process. Id. at 13-14. Braxton argues that Claim 7 should not be denied because the after-discovered and recantation evidence discussed above is sufficient to establish his actual innocence. Id. at 15. Braxton argues that Claims 8 and 9 should not be denied because the performance of his PCRA counsel was constitutionally ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668

---

[2] The trial judge stated from the bench, "I don't think there was any plan to shoot anybody when they went to that porch." Trial Transcript at 298.

(1984). Braxton argues that Claim 10 should not be denied because trial counsel's advice not to testify in his own defense was a serious error that deprived Braxton of a fair trial. Id. at 18-19.

## IV. Discussion

Federal courts have jurisdiction over applications for writs of habeas corpus challenging state confinement where the petitioner alleges a violation of federal law or the United States Constitution. A district court reviews *de novo* those portions of a magistrate judge's report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). Braxton asserts objections as to all ten claims.

### A. Claims 1, 3, 5 and 6

Claims 1, 3, 5 and 6 must be denied because petitioner failed to exhaust his state law remedies and the claims are now procedurally defaulted. Federal law requires a petitioner to exhaust all available remedies in state court before bringing a habeas petition, and to do so in compliance with the state's rules of procedure, because "in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (U.S. 1991). See 28 U.S.C. §§ 2254 (b) & (c). Except for rarely invoked exceptions not applicable here, federal district courts cannot upset a state court conviction without first providing the state courts an opportunity to review it. Rose v. Lundy, 455 U.S. 509, 518 (1982).

A habeas claim is unexhausted if the petitioner has not presented the claim to the state's highest court. Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). The Pennsylvania Supreme Court has issued an order declaring that federal habeas petitioners need not appeal to or seek allocator from it, so a petitioner may therefore exhaust his or her claims by presenting them to the Pennsylvania Superior Court. In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Pa. Sup. Ct. May 9, 2000); Whitney v. Horn, 280 F.3d 240, 250 n.11 (3d Cir. 2002). Braxton did not present Claims 1, 3, 5 or 6 to the Pennsylvania Superior Court and they are unexhausted.

Procedural default occurs when a petitioner fails to present his federal claims in state court in accordance with the state's firmly established procedural requirements. There is a procedural default if a claim is barred by a procedural rule that is "firmly established and regularly followed." Fahy v. Horn, 516 F.3d 169, 187 (3d Cir. 2008). The procedural default at issue is Braxton's failure to comply with the Pennsylvania statute of limitations. Under Pennsylvania law, a claim for post-conviction relief must "be filed within one year of the date the judgment becomes final" unless one of three enumerated but inapplicable exceptions applies. 42 Pa. C.S. § 9545 (b) (1). The United States Court of Appeals for the Third Circuit has ruled that, at least as early as November 23, 1998, 42 Pa. C.S. § 9545 was a firmly established procedural rule for purposes of habeas review. Fahy, 516 F.3d at 189. Because the rule was firmly established before Braxton was convicted, he was required to comply with the one-year limitations period for asserting his post-conviction claims.

Braxton failed to assert his claims within the limitations period of 42 Pa. C.S. § 9545. Braxton's conviction became final on May 24, 2000, ninety days after the Pennsylvania Supreme Court denied his request for discretionary review of his third degree murder conviction.[3] Braxton acknowledges that Claims 1, 3, 5 and 6 were asserted in his initial PCRA petition but were later removed from his amended PCRA petition. By amending his petition, Braxton failed to assert those claims in state court. Braxton can no longer assert those claims in state court because they are barred by the one-year statute of limitations. Since state court review is now unavailable, the claims are procedurally defaulted.

A federal court excuses procedural default if: (a) there is cause for the default and actual prejudice; or (b) the failure to consider the claims would result in a fundamental miscarriage of justice. See 28 U.S.C. §2254; Coleman v. Thompson, 501 U.S. at 749-750. To establish a fundamental

---

[3] A petitioner has ninety days from the entry of judgment by the Pennsylvania Supreme Court to file a writ of certiorari with the United States Supreme Court. Upon expiration of the ninety days, the Pennsylvania judgment becomes final. Whitney v. Horn, 280 F.3d 240, 252 (3d Cir. 2002), cert. denied, 537 U.S. 1195 (2003).

miscarriage of justice, the petitioner must demonstrate actual innocence, a showing which the Supreme Court has described as "extremely rare." Schlup v. Delo, 513 U.S. 298, 322 (1995).

Braxton argues that his PCRA attorney's failure to include the four issues in the amended PCRA petition caused the procedural default. See Traverse at 4. In a state collateral proceeding, "[t]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Cristin v. Brennan, 281 F.3d 404, 420 (3d Cir. 2002) (quoting Murray v. Carrier, 477 U.S. 478, 486 (1986)). To prove cause for procedural default, ineffectiveness of counsel must violate petitioner's Sixth Amendment rights. Id. But there is no Sixth Amendment right to representation at a PCRA proceeding. Id. Braxton has not established the requisite cause.

A fundamental miscarriage of justice exists only where a petitioner demonstrates actual innocence. Schlup, 513 U.S. at 321. Actual innocence is not itself a constitutional claim meriting relief, but rather a gateway for a habeas petitioner to have an otherwise barred claim considered on the merits. See Herrera v. Collins, 506 U.S. 390, 404 (1993). The actual innocence test also applies to petitioners who argue a lesser degree of guilt. Sweger v. Chesney, 294 F.3d 506, 522 (3d Cir. 2002), cert. denied, 538 U.S. 1002 (2003). To demonstrate actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. The evidence must be such that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. Id. at 327. The new evidence must not only prove the legal insufficiency of the conviction but also the petitioner's factual innocence. See Sweger, 294 F.3d at 523.

Braxton argues that he is actually innocent because he shot the victim in self defense. However, the new evidence on which Braxton relies to support his theory of self defense does not demonstrate actual innocence. First, Braxton relies on the recantation testimony of Danny Rice. Recantation

testimony is inherently untrustworthy. "The cases are legion that courts look upon recantations with great suspicion." United States v. Williams, 70 Fed. Appx. 632, 634 (3d Cir. 2003) (J. Becker). Second, Braxton relies on the affidavit of Roland Quay but fails to offer a credible explanation for why Mr. Quay was not available to testify at the trial. Three eyewitnesses, including Rice himself, testified at trial that the victim was unarmed. "A reasonable fact finder could easily believe those eyewitnesses, and Rice's original testimony, rather than Roland's statement and Rice's recantation." R&R at 12. The purported new evidence fails to meet the exacting standard required to establish actual innocence.

Braxton's objections to Magistrate Judge Hart's findings as to Claims 1, 3, 5 and 6 are overruled.

**B.  Claims 8 and 9**

Claims 8 and 9 of Braxton's habeas petition allege ineffective assistance of counsel in a collateral proceeding and are not cognizable under federal law. A district court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (a). "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 § U.S.C. 2254 (i). See Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004) ("the Sixth Amendment does not entitle a defendant to post-conviction counsel"). Accordingly, Braxton's objections to Magistrate Judge Hart's findings as to Claims 8 and 9 are overruled.

**C.  Claims 2, 4, 7 and 10**

Claims 2, 4, 7, and 10 have been ruled upon by Pennsylvania state courts and are not procedurally defaulted. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996 establishes the standard of review for state court decisions in a habeas action. The relevant text of AEDPA states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). The statute places the burden on the petitioner to disprove by clear and convincing evidence a presumption that the state court was correct in its decision. Thomas v. Varner, 428 F.3d 491, 498 (3d Cir. 2005), cert. denied, 549 U.S. ___, 127 S.Ct. 928 (2007).

For a state court's decision to be "contrary to" clearly established federal law, it must substantially differ from Supreme Court precedent either by contradicting the Court's precedent or reaching a different result on materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). "[I]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 888 (3d Cir. 1999), cert. denied, 528 U.S. 824 (1999).

A state court decision can be an "unreasonable application" of Supreme Court precedent if it applies the correct governing legal rule unreasonably to the facts of the case, extends the legal principle to a context where it should not apply, or refuses to extend the principle where it should apply. Williams, 529 U.S. at 407. A federal court cannot grant a writ because it would have come to a different result than the state court. See Matteo, 171 F.3d at 889. The federal court must find that the state court was objectively unreasonable in making its decision. See Williams, 529 U.S. at 411.

### 1.     Claims 2 and 10

Braxton claims that he was deprived of his Sixth Amendment right to effective assistance of counsel. In Claim 2, Braxton states that his actions were induced by post-traumatic stress syndrome, and that trial counsel's failure to present evidence of this condition led the court to conclude wrongly that he

acted with malice when he shot the victim. In Claim 10, Braxton states that trial counsel wrongly advised him not to testify, a decision which Braxton regrets because he would have offered testimony about his state of mind at the time of the shooting to negate the malice element of third degree murder.

For the petitioner's counsel to be ineffective in violation of the Sixth Amendment, counsel must have made errors so serious he failed to function as counsel, and there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 694 (1984). The Sixth Amendment does not guarantee the best possible legal representation; it requires only that counsel "play[] a role that is critical to the ability of the adversarial system to produce just results." Id. at 685. The scrutiny of counsel's performance, considered in light of all relevant circumstances, is highly deferential to counsel's decisions at trial to avoid the distorting effects of reviewing counsel's performance in hindsight.[4] Id. at 688, 690. While counsel has a duty to perform a reasonable investigation of the client's defense, even choices made after less than a complete investigation are accorded a high degree of deference. Id. at 691. The court presumes that counsel made an informed judgment and the petitioner must overcome this presumption. See Sistrunk v. Vaughn, 96 F.3d 666 (3d Cir. 1996), cert. denied, 543 U.S. 1065 (2005). A petitioner asserting a better alternative than the one chosen by counsel does not necessarily demonstrate ineffectiveness under Strickland. Marshall v. Hendricks, 307 F.3d 36, 86 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003).

Neither of Braxton's ineffective assistance of counsel claims establishes a violation of the Sixth Amendment. In Claim 2, Braxton argues that counsel failed to engage a psychologist as an expert witness to testify about Braxton's belief that he suffered from post-traumatic stress syndrome as a result of having been shot twice prior to the incident leading to Braxton's conviction. However, Braxton presented no evidence that an expert witness would have supported his claims or that he had ever sought mental health treatment prior to his trial. Trial counsel did, in fact, present evidence about Braxton's state of mind.

---

[4] The circumstances include the magnitude of the evidence against the defendant. Beuhl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999), cert. denied, 527 U.S. 1050 (1999).

11

Braxton's counsel called Cynthia Braxton, the petitioner's sister, who testified about Braxton's fear of being shot again. Trial Transcript at 275-278. The Pennsylvania Superior Court considered the performance of Braxton's counsel in light of these facts and concluded that counsel was not ineffective. Commonwealth v. Braxton, 750 Eastern District Appeal 2005, supra, at 7-8. This decision is neither contrary to, nor an unreasonable application of, Strickland.

In Claim 10, Braxton alleges that his trial counsel was ineffective for advising him not to testify at trial. Braxton's criticism of his counsel's advice does not state a violation of the Sixth Amendment. If counsel informs the defendant of the right to testify and the defendant understands that right, there is no violation. United States v. Leggett, 162 F.3d 237, 247 (3d Cir. 1998) (distinguishing counsel's advice not to testify from counsel's interference with the client's right to testify), cert. denied, 528 U.S. 868 (1999).

Braxton was informed of his right to testify and he chose to remain silent. The trial court conducted a colloquy with Braxton to inform him of his right to testify:

> COURT: Mr. Braxton, you know that you have the right to take that stand and talk to this court and tell us whatever you want to tell us. You also have the right to remain silent, you understand. Which do you prefer to do?
>
> BRAXTON: Remain silent.
>
> MR. CANNON: Remain silent, he said judge.
>
> COURT: Okay.

Trial Transcript at 279-280. Even if trial counsel failed to advise Braxton properly of his right to testify, and the Pennsylvania Superior Court found no evidence that trial counsel failed in this respect, counsel's advice did not prejudice Braxton's defense or deprive him of a fair trial. The Pennsylvania Superior Court considered the performance of Braxton's counsel and concluded that his counsel was not ineffective. Commonwealth v. Braxton, 750 Eastern District Appeal 2005, supra, at 7. Since Braxton failed to present evidence to the Pennsylvania Superior Court that his attorney prevented him from testifying, the Pennsylvania Superior Court's decision is neither contrary to, nor an unreasonable

application of federal law.

Braxton's objections to Magistrate Judge Hart's findings as to Claims 2 and 10 are overruled.

### 2. Claim 4

Braxton claims that the evidence at trial was insufficient to support a verdict of murder in the third degree because the Commonwealth failed to meet its burden of proving that Braxton did not act in self-defense. The standard of review for habeas claims challenging the sufficiency of evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).

Braxton challenges the sufficiency of evidence offered in support of the essential element of malice. Under Pennsylvania law,

> Malice is a legal term, implying much more. It comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Murder, therefore, at common law embraces cases where no intent to kill existed, but where the state or frame of mind termed malice, in its legal sense, prevailed.

Commonwealth v. Seibert, 622 A.2d 361, 364 (Pa. Super. Ct. 1993) (quoting Commonwealth v. Drum, 58 Pa. 9 (1868)). The element of malice for third degree murder can be inferred from the use of a deadly weapon on a vital body part. See Whitney v. Horn, 280 F.3d 240, 259 (3d Cir. 2002), cert. denied, 537 U.S. 1195 (2003).

Under Pennsylvania law, "[a] successful claim of self-defense negates the malice element of third degree murder."[5] Commonwealth v. Marks, 704 A.2d 1095, 1099 (Pa. Super. Ct. 1997). Once the defendant claims self-defense, the Commonwealth has the burden to disprove the defense beyond a

---

[5] Defendant's use of excessive or unnecessary force on the victim or unreasonable belief that he was in imminent danger mitigates third-degree murder to involuntary manslaughter. See Seibert, 622 A.2d at 253-254.

reasonable doubt.[6] Commonwealth v. Burns, 765 A.2d 1144, 1149 (Pa. Super. Ct. 2000). The Commonwealth may disprove the claim of self-defense by demonstrating that: (1) defendant did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm, or that the defendant used more force than was necessary to save himself from death, great bodily harm, or the commission of a felony; (2) defendant provoked the use of force; or (3) defendant had a duty to retreat and that retreat was possible with complete safety. Id. When there are conflicting versions of the killing, the fact finder may believe all, part, or none of the evidence presented by any witness, in determining the outcome of the case. Commonwealth v. Mayfield, 585 A.2d 1069, 1073 (Pa. Super. Ct. 1991).

Braxton shot Raymond Negron in the back of the head, so the trial court could conclude that he acted with malice and not in self defense. On direct appeal, the Pennsylvania Superior Court considered and rejected Braxton's challenge to the sufficiency of the evidence and found the following:

> The Commonwealth presented the testimony of several eyewitnesses who were able to recount the events leading up to the shooting. Their testimony indicated that appellant's actions stemmed from an on-going fight, but in no way supported the defense theory that appellant reasonably believed he had to shoot his victims, as he was leaving, in order to protect himself. Moreover, the testimony of Kyleem Johnson and Danny Rice established that appellant left the initial fight and returned approximately twenty minutes later. He entered the porch where a group of people still gathered, spoke a few words and began to leave. It was at this point that appellant turned back to the crowd and shot the victims (T.T., 6/24/98, at 68-75, 155). As the elements of third degree murder were established beyond a reasonable doubt and the Commonwealth successfully disproved the self-defense theory, appellant's challenge fails.

Commonwealth v. Braxton, No. 2923 Philadelphia 1998, slip op. at 3-4 (Pa. Super. Ct. Sept. 29, 1999).

A district court may only disturb a state court decision on the merits if the decision is contrary to clearly established federal law or an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. Every eyewitness who testified at trial agreed that the victim was

---

[6]On appeal, the fact finder must determine if the state disproved the defense beyond a reasonable doubt by viewing the evidence in the light most favorable to the Commonwealth. Burns, 765 A.2d at 1149.

not armed when Braxton fired his gun. See Trial Transcript, at 75-76 (testimony of Kyleem Johnson); 158 (testimony of Danny Rice); 249 (statement of Kareem Scott). Braxton's retreat and return to the scene before shooting the victim could lead a rational fact finder to conclude that Braxton had a duty to retreat and could safely do so. Braxton's shooting the victim in the back of the head could lead a rational trier of fact to conclude that Braxton did not reasonably believe it was necessary to kill in order to protect himself against death or serious bodily harm. A rational trier of fact could have found beyond a reasonable doubt that Braxton acted with malice and not in self defense when he shot the victim. The trial judge expressed doubt that "there was any plan to shoot anybody when they went to that porch," Trial Transcript at 298, but that is not inconsistent with her conclusion that Braxton acted with malice.

Braxton's objections to Magistrate Judge Hart's finding as to Claims 4 are overruled.

3.   **Claim 7**

Braxton alleges the PCRA court erred in refusing to schedule a hearing on the purported recantation and after-discovered evidence. Braxton's collateral proceeding claim is not cognizable in a habeas petition because habeas review is limited to the proceedings that led to the petitioner's conviction. Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998), cert. denied, 526 U.S. 1065 (1999); see also Lambert v. Blackwell, 387 F.3d 210, 247 (3d Cir. 2004), cert. denied, 544 U.S. 1063 (2005).

Braxton's claim of error was considered and rejected by the Pennsylvania Superior Court: "We assign no error to the PCRA court for dismissing the petition without first holding an evidentiary hearing on appellant's frivolous and self-serving claims, which lack any support in the record or from other evidence." Commonwealth v. Braxton, No. 750 Eastern District Appeal 2005, slip op. at 8 (Pa. Super. Ct. Dec. 22, 2006). This court agrees that the purported recantation and after-discovered evidence is unpersuasive. The decision of the Pennsylvania Superior Court is neither contrary to clearly established federal law nor an unreasonable determination of the facts in light of the evidence presented.

An evidentiary hearing of Braxton's purported after-discovered and recantation evidence would

15

only be appropriate if "such a hearing could enable [the] applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. ___, 127 S. Ct. 1933, 1940 (2007). Having reviewed the affidavits of Danny Rice and Quay Roland offered in support of Braxton's theory of self defense, the court concludes that a hearing will not enable the petitioner to prove the factual allegations which every court to date has rejected. Thus, Claim 7 can only be considered upon a showing that Braxton is actually innocent. Braxton failed to present evidence meeting this high standard.

Braxton's objections to Magistrate Judge Hart's finding as to Claims 7 are overruled.

## CONCLUSION

Petitioner's objections to the Magistrate Judge's Report and Recommendation are overruled, the Report and Recommendation is adopted and the application for writ of habeas corpus is denied. Claims 1, 3, 5 and 6 are procedurally defaulted and the default is not excused. Claims 8 and 9 are not cognizable because they are not based on violations of federal law. Claims 2 and 10 fail to state a claim for ineffective assistance of counsel. Claim 4 fails to establish insufficiency of the evidence to support a conviction for third degree murder. Claim 7 does not state a claim for habeas relief and fails to present new evidence warranting an evidentiary hearing. None of petitioner's claims demonstrates that he is actually innocent. The writ is denied and an appropriate order will follow.

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CURTIS BRAXTON** : | Civil Action No. 07-4200 |
| : | |
| v. : | |
| : | |
| **R.M. LAWLER, et al.** : | |

### ORDER

AND NOW, this 27th day of Oct., 2008, upon careful and independent consideration of the petition for writ of habeas corpus, and after review of the Report and Recommendation of the United States Magistrate Judge Jacob P. Hart,

IT IS ORDERED that:

1. The Report and Recommendation is **APPROVED** and **ADOPTED**.

2. Petitioner's objections to the Report and Recommendation are **OVERRULED**;

3. The petition for writ of habeas corpus is **DENIED**;

4. There is no basis for the issuance of a certificate of appealability.

*[Signature]*
S.J.